MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
JULIO SANTIAGO MORALES, HECTOR
JAVIER SANTIAGO LOPEZ, RAFAEL LUIS
HERNANDEZ, RAFAEL SANTIAGO
GOMEZ, and ROLANDO  SANTIAGO
GOMEZ, *individually and on behalf of others
similarly situated,*

                                    *Plaintiffs*,

              -against-

LOMBARDI'S PIZZA INC.  (D/B/A
LOMBARDI'S PIZZA), JOHN BRESCIO ,
MIKE BRESCIO , ISRAEL PEREZ , and
GILBERTO DOE ,

                                 *Defendants.*
------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)**

**ECF Case**

      Plaintiffs Julio Santiago Morales, Hector Javier Santiago Lopez, Rafael Luis Hernandez,

Rafael Santiago Gomez, and Rolando Santiago Gomez , individually and on behalf of others

similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace &

Associates, P.C., upon their knowledge and belief, and as against Lombardi's Pizza Inc. (d/b/a

Lombardi's Pizza), ("Defendant Corporation"), John Brescio,  Mike Brescio,  Israel Perez, and

Gilberto Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

      1.      Plaintiffs are former employees of Defendants Lombardi's Pizza Inc. (d/b/a

Lombardi's Pizza), John Brescio, Mike Brescio, Israel Perez, and Gilberto Doe.

2.      Defendants own, operate, or control two pizzerias, one of which is located at 32 Spring Street, New York, NY 10012 and the other located at 290 8th Avenue, New York, NY 10001 under the name "Lombardi's Pizza".

3.      Upon information and belief, individual Defendants John Brescio, Mike Brescio, Israel Perez, and Gilberto Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers, busboys, and a food preparer at the restaurant located at 32 Spring Street, New York, NY 10012.

5.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to assembling pizza boxes, stocking beverages, stocking plastic bags, tying up cardboard boxes, taking out garbage, cleaning ovens, sweeping the sidewalk, cleaning bike storage, opening and tidying curtains, transporting items to and from the 24th Street location, depositing money on behalf of owners, setting up outdoor seating, restocking bathrooms, restocking the bar, refilling ice, bringing up fruit and other items from the basement and  ushering customers  (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     Regardless, at all relevant times, Defendants paid Plaintiffs at the lower tip-credit rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate.

13.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.*

and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a pizzeria located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

19.     Plaintiff Julio Santiago Morales ("Plaintiff Santiago" or "Mr. Santiago") is an adult individual residing in Queens County, New York.

20.     Plaintiff Santiago was employed by Defendants at Lombardi's Pizza from approximately January 7, 2018 until on or about December 3, 2019.

21.     Plaintiff Hector Javier Santiago Lopez ("Plaintiff Javier" or "Mr. Javier") is an adult individual residing in Queens County, New York.

22.     Plaintiff Javier was employed by Defendants at Lombardi's Pizza from approximately July 1, 2014 until on or about December 12, 2019.

23.     Plaintiff Rafael Luis Hernandez ("Plaintiff Hernandez" or "Mr. Hernandez") is an adult individual residing in Bronx County, New York.

24.     Plaintiff Hernandez was employed by Defendants at Lombardi's Pizza from approximately June 2014 until on or about March 15, 2020.

25.     Plaintiff Rafael Santiago Gomez ("Plaintiff Gomez" or "Mr. Gomez") is an adult individual residing in Queens County, New York.

26.     Plaintiff Gomez was employed by Defendants at Lombardi's Pizza from approximately November 1, 2018 until on or about March 21, 2020.

27.     Plaintiff Rolando Santiago Gomez ("Plaintiff Rolando" or Mr. Rolando") is an adult individual residing in Queens County, New York.

28.     Plaintiff Rolando was employed by Defendants at Lombardi's Pizza from approximately January 1, 2019 until on or about May 16, 2020.

*Defendants*

29.     At all relevant times, Defendants owned, operated, or controlled two pizzerias, one of which is located at 32 Spring Street, New York, NY 10012 and the other one is located at 290 9th Avenue, New York, NY 10001 under the name "Lombardi's Pizza".

30.     Upon information and belief, Lombardi's Pizza Inc. (d/b/a Lombardi's Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon

information and belief, it maintains its principal place of business at 32 Spring Street, New York, NY 10012.

31.     Defendant John Brescio is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant John Brescio is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant John Brescio possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.     Defendant Mike Brescio is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Mike Brescio is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Mike Brescio possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

33.     Defendant Israel Perez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Israel Perez is sued individually in his capacity as a manager of Defendant Corporation. Defendant Israel Perez possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

34.     Defendant Gilberto Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Gilberto Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Gilberto Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

35.     Defendants operate a pizzeria located in the SoHo neighborhood of Manhattan in New York City.

36.     Individual Defendants, John Brescio, Mike Brescio, Israel Perez, and Gilberto Doe, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

37.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

38.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

39.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

40.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

41.     Upon information and belief, Individual Defendants John Brescio and Mike Brescio operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of their own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

42.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled

the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

43.     In each year from 2014 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

44.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

45.     Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers, busboys and a food preparer. However, they spent over 20% of each shift performing the non-tipped duties described above.

46.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Julio Santiago Morales*

47.     Plaintiff Santiago was employed by Defendants from approximately January 7, 2018 until on or about December 3, 2019.

48.     Defendants ostensibly employed Plaintiff Santiago as a delivery worker and a busboy.

49.     However, Plaintiff Santiago was also required to spend a significant portion of his work day performing the non-tipped duties described above.

50.     Although Plaintiff Santiago ostensibly was employed as a delivery worker and a busboy, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

51.     Plaintiff Santiago regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

52.     Plaintiff Santiago's work duties required neither discretion nor independent judgment.

53.     From approximately January 7, 2018 until on or about August 15, 2019, Plaintiff Santiago worked from approximately 5:00 p.m. until on or about 10:00 p.m., Mondays through Thursdays and from approximately 5:00 p.m. until on or about 11:00 p.m., on Fridays (typically 26 hours per week).

54.     From approximately August 16, 2019 until on or about December 3, 2019, Plaintiff Santiago worked as a delivery worker from approximately 5:00 p.m. until on or about 10:00 p.m., Mondays through Wednesdays, as a busboy from approximately 10:30 a.m. until on or about 11:00 p.m., Fridays and Saturdays, and as a delivery worker from approximately 4:00 p.m. until on or about 12:00 a.m., on Sundays (typically 38 hours per week).

55.     Throughout his employment, Defendants paid Plaintiff Santiago his wages by check.

56.     From approximately January 7, 2018 until on or about December 31, 2018, Defendants paid Plaintiff Santiago $10.85 per hour.

57.     From approximately January 1, 2019 until on or about December 3, 2019, Defendants paid Plaintiff Santiago $12.50 per hour.

58.     Plaintiff Santiago's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

59.     For example, Defendants required Plaintiff Santiago to start working one to one and a half hours prior to his scheduled start time of his busboy shift two days a week, and did not pay him for the additional time he worked.

60.     Defendants never granted Plaintiff Santiago any breaks or meal periods of any kind.

61.     Plaintiff Santiago was never notified by Defendants that his tips were being included as an offset for wages.

62.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Santiago's wages.

63.     Defendants withheld a portion of Plaintiff Santiago's tips; specifically, Defendants required Plaintiff Santiago to work as a food runner in addition to his job as a busboy and did not give him the percentage of the tips he was entitled to receive for performing that job.

64.     Although Plaintiff Santiago was required to keep track of his time, Defendants required him to record fewer hours than he actually worked.

65.     Specifically, defendants required Plaintiff Santiago to punch in one to one and a half hours after he started working as a busboy twice a week; As a result, Plaintiff Santiago was not compensated for all of the hours that he worked.

66.     On a number of occasions, Defendants required Plaintiff Santiago to sign a document, the contents of which he was not allowed to review in detail.

67.     Defendants did not provide Plaintiff Santiago an accurate statement of wages, as required by NYLL 195(3).

68.     In fact, Defendants adjusted Plaintiff Santiago's paystubs so that they reflected inaccurate wages and hours worked.

69.     Defendants did not give any notice to Plaintiff Santiago, in English and in Spanish (Plaintiff Santiago's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Hector Javier Santiago Lopez*

70.     Plaintiff Javier was employed by Defendants from approximately July 1, 2014 until on or about December 12, 2019.

71.     Defendants ostensibly employed Plaintiff Javier as a delivery worker.

72.     However, Plaintiff Javier was also required to spend a significant portion of his work day performing the non-tipped duties described above.

73.     Although Plaintiff Javier ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

74.     Plaintiff Javier regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

75.     Plaintiff Javier's work duties required neither discretion nor independent judgment.

76.     Throughout his employment with Defendants, Plaintiff Javier regularly worked in excess of 40 hours per week.

77.     From approximately July 2014 until on or about September 31, 2016, Plaintiff Javier worked from approximately 10:00 a.m. until on or about 11:00 p.m., Mondays, Tuesdays, and Thursdays, from approximately 4:00 p.m. until on or about 11:00 p.m., on Wednesdays, and from approximately 10:00 a.m. until on or about 4:00 p.m., on Fridays (typically 52 hours per week).

78.     From approximately January 1, 2018 until on or about December 12, 2019, Plaintiff Javier worked from approximately 11:00 a.m. until on or about 10:00 p.m., Mondays through Thursdays  (typically 44 hours per week).

79.     Throughout his employment, Defendants paid Plaintiff Javier his wages by check.

80.     From approximately July 2014 until on or about December 2015, Defendants paid Plaintiff Javier $9.50 per hour.

81.     From approximately January 2016 until on or about September 2016, Defendants paid Plaintiff Javier $10.50 per hour.

82.     From approximately January 2017 until on or about December 12, 2019, Defendants paid Plaintiff Javier $12.50 per hour.

83.     Plaintiff Javier's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

84.     For example, Defendants required Plaintiff Javier to start working 15 to 20 minutes prior to his scheduled start time everyday, and did not pay him for the additional time he worked.

85.     Defendants never granted Plaintiff Javier any breaks or meal periods of any kind.

86.     Plaintiff Javier was never notified by Defendants that his tips were being included as an offset for wages.

87.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Javier's wages.

88.     Although Plaintiff Javier was required to keep track of his time, Defendants required him to record fewer hours than he actually worked.

89.     Specifically, Defendants required Plaintiff Javier to punch in 15 to 20 minutes after he started working every day; As a result, Plaintiff Javier was not compensated for all of the hours that he worked.

90.     On a number of occasions, Defendants required Plaintiff Javier to sign a document, the contents of which he was not allowed to review in detail.

91.     Defendants did not provide Plaintiff Javier an accurate statement of wages, as required by NYLL 195(3).

92.     Defendants did not give any notice to Plaintiff Javier, in English and in Spanish (Plaintiff Javier's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Rafael Luis Hernandez*

93.     Plaintiff Hernandez was employed by Defendants from approximately June 2014 until on or about March 15, 2020.

94.     Defendants employed Plaintiff Hernandez as a food preparer and ostensibly as a delivery worker, and busboy.

95.     However, Plaintiff Hernandez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

96.     Although Plaintiff Hernandez ostensibly was employed as a delivery worker and busboy, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

97.     Plaintiff Hernandez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

98.     Plaintiff Hernandez's work duties required neither discretion nor independent judgment.

99.     Throughout his employment with Defendants, Plaintiff Hernandez regularly worked in excess of 40 hours per week.

100.    From approximately July 2014 until on or about December 31, 2016, Plaintiff Hernandez worked exclusively as a delivery worker from approximately 4:00 p.m. until on or about

11:00 p.m., Mondays and Wednesdays, from approximately 10:00 a.m. until on or about 11:00 p.m., on Thursdays, from approximately 10:00 a.m. until on or about 4:00 p.m., on Fridays, from approximately 10:00 a.m. until on or about 12:00 a.m., on Saturdays, and from approximately 10:00 a.m. until on or about 10:00 p.m., on Sundays (typically 59 hours per week).

101.    From approximately January 2017 until on or about December 31, 2019, Plaintiff Hernandez worked as a busboy from approximately 4:00 p.m. until on or about 12:00 a.m., on Tuesdays, Wednesdays, and Thursdays, as a busboy from approximately 11:00 a.m. until on or about 4:00 p.m. and as a delivery worker from approximately 4:00 p.m. until on or about 11:00 p.m., on Fridays, as a busboy from approximately 11:00 a.m. until on or about 4:00 p.m. and as a delivery worker from approximately 4:00 p.m. until on or about 11:00 p.m., on Saturdays, and as a busboy from approximately 10:00 a.m. until on or about 4:00 p.m., on Sundays (typically 54 hours per week).

102.    From approximately January 1, 2020 until on or about March 15, 2020, Plaintiff Hernandez worked exclusively as a busboy from approximately 4:00 p.m. until on or about 12:00 a.m., Tuesdays, Wednesdays, and Thursdays, from approximately 4:00 p.m. until on or about 1:00 a.m., on Fridays, from approximately 11:00 a.m. until on or about 4:00 p.m., on Saturdays, and from approximately 10:00 a.m. until on or about 4:00 p.m., on Sundays (typically 44 hours per week).

103.    From approximately July 2014 until on or about December 2015, Defendants paid Plaintiff Hernandez his wages in a combination of check and cash.

104.    From approximately January 2016 until on or about March 2020, Defendants paid Plaintiff Hernandez his wages by check.

105.    From approximately July 2014 until on or about December 2015, Defendants paid Plaintiff Hernandez $6.00 per hour.

106.   From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Hernandez $7.50 per hour.

107.   From approximately January 2017 until on or about March 15, 2020, Defendants paid Plaintiff Hernandez $10.00 per hour.

108.   Plaintiff Hernandez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

109.   For example, Defendants required Plaintiff Hernandez to work an additional hour past his scheduled departure time everyday, and did not pay him for the additional time he worked.

110.   Defendants never granted Plaintiff Hernandez any breaks or meal periods of any kind.

111.   Plaintiff Hernandez was never notified by Defendants that his tips were being included as an offset for wages.

112.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Hernandez's wages.

113.   Although Plaintiff Hernandez was required to keep track of his time, Defendants required him to record fewer hours than he actually worked.

114.   Specifically, Defendants required Plaintiff Hernandez to punch out and continue working for an additional 30 minutes or one hour every day; As a result, Plaintiff Hernandez was not compensated for all of the hours that he worked.

115.   On a number of occasions, Defendants required Plaintiff Hernandez to sign a document, the contents of which he was not allowed to review in detail.

116.   Defendants took improper and illegal deductions from Plaintiff Hernandez's wages; specifically, Defendants deducted 1 hour from Plaintiff Hernandez's weekly wages on two separate occasions for arriving 15 minutes late.

117. Defendants did not provide Plaintiff Hernandez an accurate statement of wages, as required by NYLL 195(3).

118. In fact, Defendants adjusted Plaintiff Hernandez's paystubs so that they reflected inaccurate wages and hours worked.

119. Defendants did not give any notice to Plaintiff Hernandez, in English and in Spanish (Plaintiff Hernandez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Rafael Santiago Gomez*

120. Plaintiff Gomez was employed by Defendants from approximately November 1, 2018 until on or about March 21, 2020.

121. Defendants ostensibly employed Plaintiff Gomez as a delivery worker and a busboy.

122. However, Plaintiff Gomez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

123. Although Plaintiff Gomez ostensibly was employed as a delivery worker and a busboy, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

124. Plaintiff Gomez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

125. Plaintiff Gomez's work duties required neither discretion nor independent judgment.

126. Throughout his employment with Defendants, Plaintiff Gomez regularly worked in excess of 40 hours per week.

127. From approximately November 1, 2018 until on or about May 15, 2019, Plaintiff Gomez worked as a busboy from approximately 4:00 p.m. until on or about 11:30 p.m., on Tuesdays,

as a delivery worker from approximately 4:00 p.m. until on or about 10:00 p.m., on Wednesdays, as a busboy from approximately 9:00 a.m. until on or about 4:30 p.m., Thursdays and Fridays, as a busboy from approximately 9:30 a.m. until on or about 4:00 p.m. and as a delivery worker from approximately 4:00 p.m. until on or about 11:00 p.m., on Saturdays, and as a delivery worker from approximately 9:30 a.m. until on or about 10:00 p.m., on Sundays (typically 53.5 hours per week).

128.   From approximately May 16, 2019 until on or about December 31, 2019, Plaintiff Gomez worked as a busboy from approximately 4:00 p.m. until on or about 11:30 p.m., Mondays and Tuesdays, as a busboy from approximately 10:00 a.m. until on or about 4:30 p.m., Thursdays and Fridays, as a busboy from approximately 10:00 a.m. until on or about 4:00 p.m. and as a delivery worker from approximately 4:00 p.m. until on or about 11:00 p.m., on Saturdays, and as a busboy from approximately 10:00 a.m. until on or about 4:00 p.m. and as a delivery worker from approximately 4:00 p.m. until on or about 10:00 p.m., on Sundays (typically 53 hours per week).

129.   From approximately January 1, 2020 until March 22, 2020, Plaintiff Gomez worked exclusively as a busboy from approximately 4:00 p.m. until on or about 11:30 p.m., Mondays and Tuesdays, from approximately 10:00 a.m. until on or about 4:30 p.m., Thursdays, Fridays, and Sundays, and from approximately 4:00 p.m. until on or about 1:00 a.m., on Saturdays (typically 43.5 hours per week).

130.   Throughout his employment, Defendants paid Plaintiff Gomez his wages by check.

131.   From approximately November 1, 2018 until on or about March 22, 2020, Defendants paid Plaintiff Gomez $10.00 per hour as a busboy and $12.50 per hour as a delivery worker.

132.   Plaintiff Gomez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

133.    For example, from approximately November 2018 until on or about December 2019, Defendants required Plaintiff Gomez to start working 30 minutes prior to his scheduled start time every day, and did not pay him for the additional time he worked.

134.    Defendants never granted Plaintiff Gomez any breaks or meal periods of any kind.

135.    Plaintiff Gomez was never notified by Defendants that his tips were being included as an offset for wages.

136.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gomez's wages.

137.    Although Plaintiff Gomez was required to keep track of his time, Defendants required him to record fewer hours than he actually worked.

138.    Specifically, from approximately November 2018 until on or about December 2019, defendants required Plaintiff Gomez to punch in 30 minutes after he started working every day; As a result, Plaintiff Gomez was not compensated for all of the hours that he worked.

139.    On a number of occasions, Defendants required Plaintiff Gomez to sign a document, the contents of which he was not allowed to review in detail.

140.    In addition, in order to get paid, Plaintiff Gomez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

141.    Defendants did not provide Plaintiff Gomez an accurate statement of wages, as required by NYLL 195(3).

142.    In fact, Defendants adjusted Plaintiff Gomez's paystubs so that they reflected inaccurate wages and hours worked.

143.    Defendants did not give any notice to Plaintiff Gomez, in English and in Spanish (Plaintiff Gomez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Rolando Santiago Gomez*

144.    Plaintiff Rolando was employed by Defendants from approximately January 1, 2019 until on or about May 16, 2020.

145.    Defendants ostensibly employed Plaintiff Rolando as a delivery worker and a busboy.

146.    However, Plaintiff Rolando was also required to spend a significant portion of his work day performing the non-tipped duties described above.

147.    Although Plaintiff Rolando ostensibly was employed as a delivery worker and a busboy, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

148.    Plaintiff Rolando regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

149.    Plaintiff Rolando's work duties required neither discretion nor independent judgment.

150.    Throughout his employment with Defendants, Plaintiff Rolando regularly worked in excess of 40 hours per week.

151.    From approximately January 2019 until on or about March 16, 2020, Plaintiff Rolando worked as a busboy from approximately 10:00 a.m. until on or about 4:00 p.m. and as a delivery worker from approximately 4:00 p.m. until on or about 12:00 a.m., on Tuesdays, as a busboy from approximately 11:00 a.m. until on or about 4:00 p.m., on Thursdays, as a delivery worker from approximately 10:00 a.m. until on or about 4:00 p.m. and as a busboy from approximately 4:00 p.m.

- 20 -

until on or about 1:00 a.m., on Fridays, as a busboy from approximately 4:00 p.m. until on or about 1:00 a.m., on Saturdays, and as a busboy from approximately 11:00 a.m. until on or about 4:00 p.m., on Sundays (typically 48 hours per week).

152.   Throughout his employment, Defendants paid Plaintiff Rolando his wages by check.

153.   From approximately January 1, 2019 until on or about March 16, 2020, Defendants paid Plaintiff Rolando $10.00 per hour as a busboy and $12.50 per hour as a delivery worker.

154.   Plaintiff Rolando's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

155.   For example, Defendants required Plaintiff Rolando to start working 30 minutes prior to his scheduled start time every day, and did not pay him for the additional time he worked.

156.   Defendants never granted Plaintiff Rolando any breaks or meal periods of any kind.

157.   Plaintiff Rolando was never notified by Defendants that his tips were being included as an offset for wages.

158.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rolando's wages.

159.   Although Plaintiff Rolando was required to keep track of his time, Defendants required him to record fewer hours than he actually worked.

160.   Specifically, Defendants required Plaintiff Rolando to punch in 30 minutes after he started working every day; As a result, Plaintiff Rolando was not compensated for all of the hours that he worked.

161.   On a number of occasions, Defendants required Plaintiff Rolando to sign a document, the contents of which he was not allowed to review in detail.

162.     Defendants did not provide Plaintiff Rolando an accurate statement of wages, as required by NYLL 195(3).

163.     In fact, Defendants adjusted Plaintiff Rolando's paystubs so that they reflected inaccurate wages and hours worked.

164.     Defendants did not give any notice to Plaintiff Rolando, in English and in Spanish (Plaintiff Rolando's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

165.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

166.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

167.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

168.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

169.     Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

170.     Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

171.      Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

172.     Plaintiffs and all other tipped workers were paid at the lowered tip-credit rate by Defendants.

173.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

174.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

175.     In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was at the lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

176.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

177.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

178.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

179.     Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

180.     On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

181.     Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

182.     Defendants paid Plaintiffs their wages in checks and a combination of cash and check.

183.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

184.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

185.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

186.     Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

187.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

188.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

189.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

190.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

191.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

192.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

193.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

194.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

195.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

196.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

197.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

198.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

199.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

200.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

201.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

202.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

203.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

204.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

205.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

206.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

207.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

208.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

209.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

210.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

211.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

212.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

213.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

214.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

215.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

216.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by

the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of

the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by

the employer; the name of the employer; any "doing business as" names used by the employer; the

physical address of the employer's main office or principal place of business, and a mailing address

if different; and the telephone number of the employer, as required by NYLL §195(1).

217.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs

and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

218.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

219.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate

statement listing each of the following: the dates of work covered by that payment of wages; name

of employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross

wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked;

and the number of overtime hours worked, as required by NYLL 195(3).

220.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs

and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

221.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

222.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

223.    Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants deducted 1 hour from Plaintiff Hernandez's pay for arriving 15 minutes late on 2 separate occasions.

224.    The deductions made from Plaintiffs' wages were not authorized or required by law.

225.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

August 25, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:        /s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*